JOHN H. MORRIS v. U. S. GRANT, JR., AND OTHERS.

IN THE MATTER OF THE PETITION OF HENRY B. LAIDLAW
AND ANOTHER.

*Sale of securities by a pledgee — notice of defect of title after delivery but before payment — effect of a decision of a committee of the Stock Exchange upon the members thereof — how far a stranger is bound thereby.*

The firm of Grant & Ward pledged with the petitioners, members of the Stock Exchange, fifty-three negotiable railroad bonds of $1,000 each, to secure a loan made to the firm. The bonds were sold on the floor of the exchange, after notice, and as provided by the rules thereof, at a price which, with the proceeds of other securities then sold, was more than sufficed to extinguish the loan as collateral to which they were then held. Ten of the bonds were delivered at once, and the price paid in cash. The remaining forty-three, although immediately deliverable and payable in cash, were, without any fault on the part of the firm of Grant & Ward, not delivered until the next day. After the delivery of the bonds to the buyer, but before he had paid therefor, he was notified that the bonds did not belong to Grant & Ward, and that they had no authority to pledge them to secure the loan made by the petitioners:

*Held,* that the buyer could not refuse to complete the purchase, and that the assignee of the firm of Grant & Ward was not liable to the petitioners, who had taken back the bonds, for any loss arising from a subsequent depreciation in their value.

The rules of the Stock Exchange provide for the appointment of a committee on securities to whom shall be referred for adjudication all disputed questions as to the regularity of stock certificates, bonds, etc. (other than those of the United States government), dealt in at the exchange, and all applications for placing on the list the securities of the several States. After the buyer had refused to pay for the bonds the matter was referred to this committee, who decided that the forty-three bonds might be returned and payment thereof be refused.

*Held,* that this decision in no way affected the rights and liabilities of Grant & Ward, because:

*First.* The committee had no jurisdiction over the question referred to them, its jurisdiction embracing only questions relating to the genuineness and regularity of the form of securities.

*Second.* Grant & Ward, the real parties in interest, had no notice of the hearing before the committee, and no opportunity to be heard.

*Third.* That there was no question as to the legal rights of the parties to be adjudicated.

*Quære,* as to whether the fact that the loan was made upon the floor of the exchange by one member thereof to another acting in behalf of Grant & Ward, who were not members thereof, subjected Grant & Ward to the rules established by the constitution and by-laws of the exchange.

APPEAL by the receiver from an order of the Special Term in the above entitled matter.

This was an application for leave to sell certain railroad bonds deposited by the firm of Grant & Ward with the petitioners, as collateral to a loan. The firm of Grant & Ward had made a general assignment for the benefit of its creditors.

*Wm. H. Hornblower*, for Julian T. Davies, receiver, appellant.

*Anson Maltby*, for the petitioners, respondents.

DAVIS, P. J.:

If it be conceded in this case that the loan of the petitioners, who were members of the Stock Exchange, to Grant & Ward, who were not such members, was, because made on the floor of the exchange through a broker acting as their agent, in all respects subject to the rules of the board of brokers notwithstanding the borrowers were by such rules precluded from personally attending the sale of their collaterals, and bidding or otherwise acting to protect their own interests, there will still remain important questions which we think must control the decision of this case. In such a transaction the party who proposes to enforce his power of sale at the board under its rules puts himself upon his strict legal rights, and must see to it that his proceedings conform to them in every material particular. Without considering the effect of a demand of payment of the loan at or before a quarter-past two o'clock when the rules gave the right of payment at or before half-past two o'clock, or the effect of a notice of sale at the former instead of the latter time, or the effect of a sale of part of the collaterals before half-past two o'clock (to wit, at 2.25), and how far those sales can be held to affect such of the sales as were in fact made after half-past two o'clock, we think it advisable to go directly to another and more important question.

Among the collaterals held by the petitioners as security for the loan were fifty-three $1,000 bonds of the New York, Chicago and St. Louis Railway Company. The petitioners were *bona fide* holders of those bonds as collateral security for the loan of $100,000. The bonds were negotiable instruments, and their title as holders in good faith for value, to the extent necessary for their pro-

tection, was, so far as anything is disclosed in the case, wholly unimpeachable. At the time of the sale there was nothing even to cast a cloud upon their rights. These bonds were all sold by the chairman of the board under the rules for cash at a price which with proceeds of the sales made of other collaterals, more than extintinguished the loan of $100,000, with interest and commissions.

Ten of the bonds so sold were delivered at once and the cash for them was paid. The remaining forty-three were immediately deliverable and entitled to be paid for in cash. For some reason, not satisfactorily explained, they were not delivered until the next day. That delivery was good under the rules, but it subjected the vendors to such damages as a committee might award. The delay, however, could not affect the rights of the borrowers if they chose to stand upon *the cash sale for immediate delivery*, unless the subsequent delivery proved ineffective by reason of the seller's inability to have given good title on the day of sale. The delay in delivering was no fault of the borrowers. They did nothing in this instance to cause the delay, and are not chargeable with any of its consequences. On the day after the sale a delivery of the bonds was made to the buyer. He received them but on the morning of that day the attorneys of the railroad company which issued the bonds, served on the petitioners a notice that the railroad company claimed the bonds on the ground, in substance, that they had been deposited by said company with Grant & Ward as collateral to a loan made by that firm to the company, and that Grant & Ward had no authority to use them as a pledge for the loan to them made by petitioners. The fact of such notice having been given came to the knowledge of the buyer at the sale under the rule after the delivery but before payment therefor, and he for that reason objected or refused to receive and pay for the bonds. The question of his obligation to receive and pay was referred for arbitration to the standing committee of the Board of Exchange known as the "committee on securities." That committee is created under article 4 of the constitution of the New York Stock Exchange, by a provision which is as follows :

"*Fourth*. A committee on securities, to whom shall be referred for adjudication all disputed questions as to the regularity of stock

certificates, bonds, etc. (other than those of the United States government), dealt in at the exchange, and all applications for placing on the list the securities of the several States."

After several sessions this committee determined in substance, that the portion of the bonds delivered on the day of the sale was well delivered and must be paid for, and that the forty-three bonds delivered on the next day might be returned and payment refused. Acting upon this "adjudication," the petitioners received back the forty-three bonds and have ever since retained them, and are now asking for leave to sell them with a view to charge any deficiency that may arise on the sale to the estate of Grant & Ward, in the hands of the receiver. It is not pretended that Grant & Ward had any knowledge of the action of the committee on securities, or appeared upon or consented to the arbitration, or to the subsequent acts of the petitioners based thereon. Upon this state of facts we are of opinion, for several reasons, that the petitioners establish no right to the relief prayed for.

First. Because, under the constitution of the Board of Exchange, and so far as any facts are disclosed to us, the committee on securities had no jurisdiction of the question referred to them. They have jurisdiction of all questions "as to the regularity of stock certificates, bonds, etc.,     *     *     *     dealt in at the exchange." * * * This embraces questions as to the regularity of the form of bonds; regularity of issue, which includes genuineness; regularity as to being within the list of admissions to the board, and questions of that nature; but they have nothing to do with the legality of a tender or delivery of bonds conceded to be regular in all those respects, but refused or objected to on some ground not available against a bona fide holder for value.

Second. Because the supposed arbitration was as to Grant & Ward (the real parties) wholly ex parte. They had no notice thereof, no opportunity to be heard and were not heard; and their rights, as fixed by the sale and delivery, could not thus be destroyed or affected. It is fundamental law that no man can be deprived of his rights or property without a hearing or an opportunity to be heard. And if a voluntary association adopt rules obligatory upon its own members, by which their rights may be summarily determined between themselves, such determination has no external force

to injure or impair the rights of persons not voluntarily subject to the jurisdiction of the tribunal.

*Third.* If the dealings of Grant & Ward, in effecting the loan could be construed to subject them to the established rules of the constitution and by-laws of the exchange, in relation to the sale and delivery of their collaterals, yet that could go no farther than to hold them bound by adjudications made by committees clothed with jurisdiction by such constitution or by-laws, and not of one to which no such power is given. There is, it seems, an arbitration committee of the Board of Exchange to whose jurisdiction such questions belong, though the case does not specifically disclose their power.

*Fourth.* There was no question as to the legal rights of the parties to be adjudicated. The petitioners were *bona fide* holders for value of the bonds under the pledge. If they proceeded regularly to sell, the buyers took good title on the purchase, and no claimant, on such grounds as were named in the notice served, could prevent the vesting of good title in the buyers. The committee were wrong in their adjudication, and were introducing a principle or rule exceedingly dangerous and prejudicial to both buyers and sellers at the exchange, for if it be the law of the exchange that intermediate a sale and the delivery a notice of claim of this character served on the seller, permits the buyer to escape acceptance, a door of escape from all unfortunate purchases or sales is widely opened. If one party be not bound to take after such notice the other is not bound to deliver, and so the service of a notice, which in law cannot affect the rights of a vendor who holds in good faith for value paid or advanced becomes a convenient loop-hole of escape from unprofitable sales or purchases.

In this case the notice was of no effect. The duty of the petitioners was to disregard it and enforce the sale. The supposed arbitration was wholly ineffective as to the rights of the borrowers, and cannot bind the receiver of their estate.

The order appealed from was erroneous and must be reversed, with ten dollars costs of the appeal and disbursements, and the prayer of the petition be denied, with costs of the proceedings below.

Brady and Daniels, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and prayer of petition denied, with costs of proceedings below.